# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTINA GOULD,**

**Plaintiff,**

**v.**                                    **Case No. 21-CV-308**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration,**

**Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging she has been disabled since November 15, 2018 (Tr. 16; 236), plaintiff Christina Gould seeks supplemental security income and disability insurance benefits. She is insured through June 30, 2023. (ECF No. 16.) After her application was denied initially (Tr. 63-94) and upon reconsideration (Tr. 95-128), a hearing was held before Administrative Law Judge (ALJ) William Shenkenberg on August 13, 2020 (Tr. 30-62). On November 2, 2020, the ALJ issued a written decision concluding that Gould was not disabled. (Tr. 13-25.) After the Appeals Council denied Gould's request for review on January 4, 2021 (Tr. 1-3), she filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4; 9) and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Gould "has not engaged in substantial gainful activity since November 15, 2018, the alleged onset date[.]" (Tr. 16.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Gould has the following severe impairments: "migraines; asthma; obesity; depression; anxiety." (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20

C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Gould "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Gould has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally climb ladders, ropes, and scaffolds. She should avoid concentrated exposure to irritants, such as fumes, odors, dusts and gases; and avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. She is able to understand, remember and carry out simple instructions and perform simple routine tasks. She is able to work in a low stress job defined as having only occasional changes in the work setting. She is able to maintain concentration, persistence and pace for simple tasks in two hour increments. She can have occasional interaction with the public, coworkers, and supervisors.

(Tr. 18-19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Gould was unable to perform any past relevant work. (Tr. 23.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that Gould was capable of performing jobs that exist in significant numbers in the national economy, including cleaner (Dictionary of Occupational Titles (DOT) number 919.687-014), hospital cleaner (DOT 323.687-010), and counter supply worker (DOT 319.687-010). (Tr. 24.) Therefore, Gould was not disabled. (Tr. 24.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve

conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

Gould argues that the ALJ failed to adequately account for her migraines when he assessed her RFC. (ECF No. 15 at 13-17.)

Gould testified that a migraine usually will start when she is asleep, waking her up and causing her to need to run to the bathroom to vomit. (Tr. 39.) She treats the migraines with two medications—sumatriptan (Imitrex) to address the headache and another medication to address the vomiting. (Tr. 40.) The first two days of a migraine are the worst, and she cannot get out of bed and needs to lay down in complete silence and darkness. (Tr. 40.) If she is exposed to light or sound she will vomit again and the intensity of the headache will increase. (Tr. 39.) On the third day she can "function," and on the fourth day "it kind of recedes to just like a headache." (Tr. 40.)

If a migraine gets so bad that she "can't deal with it anymore" because her "body just completely is worn out and tired" she will seek emergency treatment where she

receives a "migraine cocktail" of drugs that "relieves the pressure within 30 minutes." (Tr. 41.) In the year prior to the hearing she reported having to seek emergency treatment for her migraines "probably ten times." (Tr. 41.)

> Migraines are vascular headaches involving throbbing and pulsating pain caused by the activation of nerve fibers that reside within the wall of brain blood vessels traveling within the meninges (the three membranes covering the brain and spinal cord). There are two major types of migraine: Migraine with aura and migraine without aura. Migraine with aura is accompanied by visual, sensory, or other central nervous system symptoms. Migraine without aura is accompanied by nausea, vomiting, or photophobia (light sensitivity) and phonophobia (sound sensitivity). Migraine without aura is the most common form of migraine.

SSR 19-4p, § 1 (italics omitted).

Migraines are probably the most challenging impairment that regularly arises in disability claims. *See Krevs v. Saul*, No. 18-CV-1742, 2020 U.S. Dist. LEXIS 1236, at *4 (E.D. Wis. Jan. 6, 2020). They are not subject to objective verification. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (noting that imagining is generally useful only to rule out certain possible causes of migraines); *see also* SSR 19-4p, § 2. Thus, determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms, including how her symptoms respond to treatment. *See Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020).

Moreover, migraines are highly variable. Both the frequency and severity of a claimant's migraines may change over time, and migraines may even abate for lengthy periods. *See Hinds v. Saul*, 799 F. App'x 396, 401 (7th Cir. 2020). When a claimant is not

suffering from a migraine, her functioning may be wholly unimpaired. *Krevs*, 2020 U.S. Dist. LEXIS 1236, at *4. Thus, when assessing a claimant's activities of daily living under SSR 16-3p, the fact that she reports often engaging in robust activities is not as probative in the context of migraines as it may be with, for example, certain common physical impairments. An ALJ's assessment of a claimant's daily activities should take into account how her activities may vary between her good days and her bad days.

If a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month could be disabling. (Tr. 57 (vocational expert testimony that missing work more than once per month would preclude work).) For this reason, it is generally important for an ALJ to include an absenteeism rate when determining the RFC of a claimant who suffers from migraines. *See Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).

When an ALJ accepts that a claimant suffers from migraines but concludes that she is not disabled, there are generally two possible explanations. Either the ALJ found that the claimant did not suffer migraines at a disabling frequency, or the migraines were not of a disabling severity (*i.e.*, the ALJ found that the claimant could work while suffering a migraine). *Cf. Krevs*, 2020 U.S. Dist. LEXIS 1236, at *4 ("Thus, to assess whether a claimant's migraines preclude substantial gainful activity, it is necessary to assess both how often the claimant suffers migraines and how severe those migraines are.").

The ALJ stated:

> after careful consideration of the evidence, the undersigned finds that although the claimant's medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision.

(Tr. 20.) With respect to Gould's migraines, the ALJ said:

> Although the claimant has migraines, it was noted her migraines were under "good control" with medications (1F/159, 164). Additionally, exams frequently showed she is alert and oriented, no acute distress, normal coordination, normal range of motion, intact cranial nerves II-XII, and no focal weakness or numbness (3F/41-42, 61, 5F/6-7).

> Therefore, the objective physical record does not support the severity of alleged disabling symptoms and instead supports a finding that the claimant remains capable of performing a range of medium work within the restrictions set forth herein.

(Tr. 21.) He also pointed to Gould's activities of daily living, including that "she reported being capable of preparing meals, performing housework, cleaning, doing laundry, watching television, caring for pets, driving, and shopping despite her symptoms," as well as driving 20 minutes every day to see her fiancé and driving him to work. (Tr. 21.) Moreover, Gould reported working since November 2019 for three hours a day as a driver for Instacart. (Tr. 21.) In sum,

> the claimant's receipt of conservative treatment, rather good objective diagnostic imaging and physical/mental status examination findings, as well as admitted activities of daily living all suggest that the claimant's impairments are not as severe as she alleged, and instead supports a conclusion that she remains capable of performing work within the restrictions set forth herein.

8

(Tr. 21.) When scrutinized and viewed in light of the record as a whole, these reasons are insufficient to support the ALJ's conclusion that Gould's migraine symptoms are not as severe as she alleged.

As to the fact that a physician characterized Gould's migraines as under "good control" with sumatriptan and tramadol (Tr. 476, 481), this fact is certainly relevant in the ALJ's assessment of the severity of Gould's symptoms. But its relevance is diminished by its context. Gould reported a headache three days prior to seeing the physician (Tr. 477), and just a day before she had told a counselor that three to eight times per month she got migraines that were severe enough to cause her to vomit (Tr. 633). The physician's note also predated the alleged onset date, albeit only by a month. In the month that followed, Gould would be fired from her job at Subway because of attendance issues that Gould attributed to her migraines and other impairments. (Tr. 45-46.)

Likewise, Gould's activities of daily living were undoubtedly relevant in assessing the severity of her symptoms. *See* SSR 16-3p. But the ALJ's assessment of Gould's daily activities did not appear to take into account the variable nature of her symptoms. For example, although Gould initially testified that she drove her fiancé to and from work "every day," she then said that she would not drive him whenever she had a headache, which was four to eight times per month. (Tr. 52.) It is unclear if the ALJ simply ignored this caveat or if he concluded that it was not credible in light of Gould's testimony that she saw her fiancé "every day."

9

Similarly, the ALJ did not appear to consider the variable nature of Gould's symptoms when he considered her ability to work part time for Instacart. There is no indication that the ALJ accounted for the flexible nature of Gould's work as a driver with Instacart. Such work is usually self-directed, without many of the strictures of traditional employment, and flexible enough to account for a claimant's good days and bad days. And, in any event, "[t]here is a significant difference between being able to work a few hours a week and having the capacity to work full time." *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010); *see also Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

And, finally, it is unclear what significance the ALJ attached to his observation that "exams frequently showed she is alert and oriented, no acute distress, normal coordination, normal range of motion, intact cranial nerves II-XII, and no focal weakness or numbness (3F/41-42, 61, 5F/6-7)." Two of the ALJ's citations (3F/41-42 and 5F/6-7) related to migraine treatment Gould received in the emergency department, and in this regard would appear to be highly relevant in assessing her ability to function while suffering from a migraine (exhibit 3F/61 related to treatment for a cold). But "alert and oriented" is a low bar and in no way inconsistent with a claim of disability. And although the notes from October 22, 2019, characterize her as having "no acute distress" (Tr. 691), the ALJ seems to have overlooked that notes from the March 7, 2020 visit assessed her constitution as "uncomfortable" (Tr. 733).

It is possible that the ALJ found that Gould was exaggerating her symptoms. And there is evidence that could support such a conclusion. For example, she testified she sought emergency care for migraines "probably ten times" in the year preceding the hearing (Tr. 41), but the court has identified only two such instances (Tr. 728; 686). In fact, in the entire record the court has identified only six other instances of Gould seeking acute care for migraines, all of which predate the alleged onset date. (Tr. 345 (Sept. 8, 2017); 400 (Feb. 12, 2018); 418 (March 28, 2018); 431 (May 29, 2018; 441 (Aug. 8, 2018); 447 (Sept. 16, 2018).) Thus, if viewed in terms of the need for acute care, her assertion that her "migraines continued to worsen" (ECF No. 15 at 14) after the onset date is not supported by the record.

But it is inappropriate for the court to speculate as to the reasons why the ALJ did not consider Gould's variable functioning. The court must rely on what the ALJ said and not what he could have said. And what the ALJ did say is insufficient to support his conclusion.

## 5.  Conclusion

Gould baldly asks that the court directly award benefits. (ECF No. 15 at 18.) However, she makes this request without any regard for the high standard applicable for this extraordinary relief. Such perfunctory and undeveloped arguments are waived, especially when they are unsupported by any legal authority. *See Krell v. Saul*, 931 F.3d 582, 588 n.1 (7th Cir. 2019) (citing *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d

599, 607 (7th Cir. 2016). In any event, a direct award of benefits is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

On remand, the ALJ must reassess Gould's RFC and specify how the variable nature of her migraines may affect her absenteeism if she were subject to sustained, fulltime employment.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated** and, pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of February, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge